**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

NATIONAL UNION FIRE INSURANCE COMPANY PLAINTIFF

v. Civil Action No. 3:04-cv-340WS

MISSISSIPPI INSURANCE GUARANTY ASSOCIATION DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the court are the opposing motions of the parties seeking summary judgment under the auspices of Rule 56(a) and (b)[1] of the Federal Rules of Civil Procedure. The complaint for declaratory judgment herein was filed by the plaintiff National Union Fire Insurance Company ("National Union") pursuant to Title 28 U.S.C. § 2201[2] and Rule 57[3] of the Federal Rules of Civil Procedure. National Union which provides general insurance coverage, including medical liability insurance which is the topic of the instant case, is an insurer of, among others, Dr. Edwin Orr, an emergency room physician with the Senatobia Community Hospital. The summary judgment

---

[1]Rule 56(a) provides that "[a] party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

Rule 56(b) provides that, "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2]Title 28 U.S.C. § 2201states that, "a District Court may utilize a declaratory judgment to declare the rights of parties "whether or not further relief is or could be sought."

[3]Rule 57 of the Federal Rules of Civil Procedure specifically provides that, "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

motion submitted by National Union seeks to declare that defendant Mississippi Insurance Guaranty Association ("MIGA") now has primary responsibility for providing insurance coverage for any judgment that may be rendered against Dr. Orr in an on-going state court action, coverage which was to have been provided by the now insolvent insurer. Pennsylvania Hospital Indemnity Company ("PHICO"), which was the primary insurance carrier for Dr. Orr, was declared insolvent by the State of Pennsylvania, through the Commonwealth Court of Pennsylvania, on February 1, 2002. *See Van Riper v. Correctional Medical Services*, 44 Fed. Appx. 445 (10th Cir. 2002). Ultimately, National Union asks this court to conclude that MIGA's responsibility precedes any responsibility that National Union might have.

The summary judgment motion submitted by MIGA couches this dispute in a different light, asserting that it is National Union that has responsibility for the insurance coverage in question. In the event the court finds that MIGA has any responsibility in this instance, MIGA alternatively contends that it would be entitled to credit for the limits paid by National Union, thereby offsetting MIGA's responsibility, if any.

National Union is a Pennsylvania corporation. MIGA is an unincorporated entity created pursuant to Mississippi law. Thus, this court's subject matter jurisdiction is predicated on diversity of citizenship and a requisite amount in controversy exceeding $75,000.00,[4] as allowed under Title 28 U.S.C. § 1332.

---

[4]Title 28 U.S.C. § 1332(a) provides in pertinent part that, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different states; ..."

The issue submitted by the parties is one allegedly not yet addressed by the Mississippi courts. The question to be resolved is whether a statutory entity such as MIGA, which is not an insurance company, but an insurance guarantor, is required to step into the shoes of an insolvent insurer before all other sources of collectable insurance have been exhausted. For the reasons that follow, this court is persuaded to grant summary judgment in favor of MIGA on this matter.

**APPLICABLE LAW**

Federal courts, when acting under a diversity grant of subject matter jurisdiction, apply state substantive law when adjudicating state law claims such as this contractual dispute. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), discussing the "Erie Doctrine" established by the United States Supreme Court in the case of *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties in the instant case agree that they have offered this court an unsettled point of state law; thus, the "Erie Doctrine" requires this court to determine how the Mississippi Supreme Court would interpret its own law if presented with the question. This court's role is not to create or modify state law; rather, this court is required only to predict it. *Batts v. Tow-Motor Forklift Co.*, 978 F.2d 1386, 1389 (5th Cir. 1992). So, where the state courts have not yet decided a particular question, it is the duty of this federal court to "guess," albeit reasonably and searchingly what the state court would hold if faced with that question. *Branch-Hines v. Hebert*, 939 F.2d 1311, 1320 (5th Cir. 1991).

**PERTINENT FACTS**

The Pennsylvania Hospital Indemnity Company ("PHICO") issued liability insurance coverage under Policy No. HCL 10256 which covered Emcare Holdings, Inc.; Spectrum Emergency Care, Inc.; STAT Healthcare, Inc. (later Emergestat, Inc.); EM-1 Medical Services, PC, and the emergency room physicians working under contract with EM-1 Medical Services. During the period of time in question, EM-1 Medical Services operated the Senatobia Community Hospital emergency room.

PHICO's policy of insurance provides that "[a]ny insurance afforded by this policy for medical professional liability arising from a medical incident *is primary insurance*. As primary insurance, PHICO's obligations are not affected unless other insurance is primary, in which case PHICO would share with such other insurance by methods (a) or (b) below, as applicable." Thus, where the insured is covered by another insurance policy, the PHICO policy states that it will provide a pro rata share of the total limits of coverage available.

During the time period in question, plaintiff National Union simultaneously provided liability coverage through Policy No. 140-73-10, among others, to Dr. Cary N. Mettetal and Dr. Edwin Orr, two emergency room physicians also covered by the PHICO policy. The National Union policy, too, offers primary coverage, but the policy contains a clause which states that "[a] loss covered under this policy may also be covered under another policy you have. If it is, our policy will apply only in excess of such coverage no matter how such other coverage is described. This clause will not apply to coverage which is expressly stated to apply in excess of this specific policy."

The parties do not dispute that one Patricia Wright, a patient, received treatment at the Senatobia Community Hospital from Drs. Mettetal and Orr on March 23, 1999, and that Patricia Wright died on March 26, 1999. Kathleen Wright filed Civil Cause No. 14-CI-99-0019 on behalf of Patrica Wright in the Circuit Court of Coahoma County against Emergestat, Inc.; Dr. Mettetal; Dr. Orr; and Senatobia Community Hospital for negligence. All the defendants in the state case, except for Dr. Orr, settled, and PHICO paid the settlement proceeds to Kathleen Wright. According to National Union, it also provided settlement funds as the excess carrier for the settlement amount not paid by PHICO. As of the date this lawsuit was filed, over two million dollars in benefits had been paid to the estate of Patricia Wright by PHICO and National Union. There remained only the matter of Dr. Orr's liability which was to proceed to trial. Then, while the matter of Dr. Orr's liability was still pending, PHICO was declared insolvent by the State of Pennsylvania.

Now, National Union, which has acted as an excess coverage carrier while PHICO has provided the primary coverage up to its policy limits, seeks to substitute MIGA for PHICO. As set forth more fully below, a legislatively-created entity like MIGA ordinarily will stand in for an insolvent insurer in accordance with the directives of state law which guarantees insureds the coverage they expected to receive from their insurance company before it became insolvent. In the instant case MIGA has refused to stand in as the primary carrier for any judgment which may be imposed against Dr. Orr although out of an abundance of caution, MIGA has provided costs for Dr. Orr's defense.

**MIGA AND ITS JURISPRUDENCE**

MIGA is a statutorily-created unincorporated association consisting of insurance companies doing business in Mississippi. Each solvent insurer doing business in this state is assessed a pro rata share of amounts paid on behalf of insolvent insurers. *Mississippi Insurance Guaranty Association v. Byars,* 614 So.2d 959, 963 (Miss. 1993); *Bobby Kitchens v. Mississippi Insurance Guaranty Association*, 560 So.2d 129, 131 (Miss. 1989); *Mississippi Insurance Guaranty Association v. Gandy*, 289 So.2d 677, 681 (Miss. 1973). MIGA is prohibited by statute from paying anything other than a covered claim. *Mississippi Insurance Guaranty Association v. Goldin Properties, Inc.*, 893 So.2d 1062, 1063 (Miss. App. 2004). Moreover, the Mississippi Supreme Court has stated on more than one occasion that the statutes require all other sources of insurance to be exhausted before looking to MIGA for any coverage. *Mississippi Insurance Guaranty Association v. Byars*, 614 So.2d at 963; *Bobby Kitchens*, *Inc.,* 560 So.2d at 131. Although none of these decisions refers to a specific statue stating this principle, MIGA relies upon Miss. Code Ann. § 83-23-123 which it refers to as the "exhaustion requirement" of the legislation governing MIGA. Section 83-23-123(1) provides that "[a]ny person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy."

An "insolvent insurer" such as PHICO is defined by Miss. Code Ann. § 83-23-109(g) as "an insurer licensed to transact insurance in this state either at the time the policy was issued or when the insured event occurred and against whom an order of liquidation with a finding of insolvency has been entered by a court of competent jurisdiction... ." Miss. Code Ann. § 83-23-103 provides in pertinent part that "[t]he purpose of this article is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers." Miss. Code Ann. §83-23-107 further provides that "[t]his article shall be liberally construed to effect the purpose under section 83-23-103, which shall constitute an aid and guide to interpretation." A "covered claim" is defined in Miss. Code Ann. § 83-23-109(c) (1972) as "an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state."

**SUMMARY JUDGMENT JURISPRUDENCE**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Electrical Industries Company v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254-55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

Likewise, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence. *See Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir. 1995). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548.

## NATIONAL UNION'S ARGUMENT FOR SUMMARY JUDGMENT

National Union first relies on Mississippi's rule that unambiguous policy provisions are to be given their plain meaning. *Employers Mutual Casualty Company v. Nosser*, 250 Miss. 542, 164 So.2d 426 (1964); *Perry v. Southern Farm Bureau Casualty Insurance Company*, 251 Miss. 544, 170 So.2d 628 (1965); *Nationwide Insurance Company v. Ladner*, 956 F.Supp. 697, 699 (S.D. Miss. 1996). The United

States Court of Appeals for the Fifth Circuit in *Foreman v. Continental Casualty Company*, 770 F.2d 487, 489 (5th Cir. 1985), held that, under Mississippi law, "... insurance contracts, like all other contracts where clear and unambiguous, must be construed exactly as written." National Union argues that its excess coverage clause, or "other insurance" clause is plainly worded and should control the outcome of this dispute.

National Union also contends that it is entitled to the benefit of its "other insurance" clause in the same way the courts have allowed insurers to have the benefit of exclusionary provisions in insurance contracts. In *Liberty Mutual Fire Insurance Company v. Canal Insurance Company,* 177 F.3d 326 (5th Cir. 1999) (applying Mississippi law), the Fifth Circuit stated that when an insurer can show that an exclusion clause is not subject to any other reasonable interpretation that would afford coverage, the insurer will be entitled to apply the exclusion. *Id*, at 331, citing *Nationwide Mutual Insurance Company v. Garriga*, 636 So.2d 658 (Miss. 1994) (exclusionary clause). The courts will strive to give effect to the parties' intention, as expressed by the plain language of the policy, but where there are two or more reasonable interpretations of a clause, the court will adopt the interpretation that provides coverage. *Id*.

Embedded in National Union's argument is the oft-seen question of primary versus excess coverage where two insurance companies lock in combat over which is to provide coverage. This court is aware that Mississippi recognizes and distinguishes primary versus excess coverage.

Mississippi also recognizes as valid "other insurance" provisions such as the one in National Union's policy when there is no conflict with another policy. *Geiselbreth v. Allstate Insurance Company*, 8 F.3d 281 (5th Cir. 1993); *Dixie Insurance v. State Farm Mutual*, 614 So.2d 918 (Miss.1992); *Robinette By and Through McMahon v. American Liberty Insurance Company*, 720 F.Supp. 577, 579 (S.D. Miss. 1989). Where a dispute involves two conflicting "other insurance" clauses, Mississippi's "rule of repugnancy" might apply. This rule provides that if there is a conflict in the "other insurance" or excess clauses of two policies, which standing alone would provide primary coverage to the insured, the clauses are mutually repugnant and are to be disregarded. *Liberty Mutual Fire Insurance,* 177 F.3d at 336, citing *Allstate Insurance Company v. Chicago Insurance Company*, 676 So.2d 271, 275 (Miss. 1996).

The PHICO policy in question provided primary coverage, while the National Union policy, a primary coverage policy, contains a clause which says it will provide for excess coverage over and above the limits of PHICO's coverage where PHICO's coverage is also primary. So, were this a suit simply between PHICO and National Union, this court would not reach the "rule of repugnancy," but would interpret the policies in a manner which would provide for coverage. *Liberty Mutual Fire Insurance Company,* 177 F.3d at 331. National Union argues that this court should follow the same approach here, but simply substitute MIGA for PHICO.

Next, National Union cites the above referenced Mississippi statutes, concluding that the covered claim definition under the statutes applies in this case to

an insolvent primary coverage carrier. While National Union acknowledges the exhaustion requirement of Miss. Code Ann. § 83-23-123, National Union contends that because its coverage does not apply until all coverage offered by the primary carrier (PHICO) is exhausted, its coverage does not become effective until MIGA has stepped in and paid for any coverage remaining under the PHICO policy.

**MIGA's ARGUMENT FOR SUMMARY JUDGMENT**

MIGA seeks a determination by this court that National Union must bear first responsibility for any judgment which may be rendered against Dr. Orr, that alternatively MIGA would be entitled to credit for the amount paid by National Union, and that National Union should be required to pay MIGA's expense for providing Dr. Orr a defense (and amount in excess of $22,000.00 at the time this lawsuit was filed).

In support of its argument, MIGA first offers the Declarations page of National Union's policy which provides as follows:

> We will pay amounts you are legally required to pay to compensate others for loss resulting from your wrongful act or that of another for whom you are legally responsible. The wrongful act must be solely in your providing or failing to provide professional services in the conduct of you profession as stated in Item 6 of the Declarations, and must take place on or after the retroactive date and before the end of the policy period. A claim for such wrongful act must be made against you during the policy period, and we or our authorized agent also must be notified of the claim in writing during the policy period.

MIGA contends is that this is the standard language of a primary coverage policy, particularly because the coverage attaches immediately upon the occurrence of a covered loss. No language in National Union's policy, says MIGA, describes the coverage of National Union to be strictly of the excess or "umbrella" nature; instead,

says MIGA, the “other insurance” clause states only that National Union’s coverage will be excess when there exists another primary insurance policy such as PHICO’s. The premium for National Union’s policy, says MIGA, is a full premium, not the reduced amount ordinarily charged by mere excess carriers. So, MIGA submits that National Union’s policy is not a true excess policy.

MIGA also notes that virtually all primary coverage policies contain an “other insurance” clause of one of the types recognized by the Mississippi Supreme Court in *K. L. M. Distributing Co. v. Washington General Ins. Corp.*, 215 So.2d 710 (Miss. 1968). In that case, the Mississippi Supreme Court recognized three general types of 'other insurance' clauses under Mississippi law. Most provide that in the event of 'other valid and collectible insurance,' the particular company's policy either (a) will assume a prorata share of the loss, or (b) will be noneffective, or (c) will be excess insurance over the other policy's coverage. *Id.*

In this case, says MIGA, PHICO’s policy contains a pro rata “other insurance” clause which provides that PHICO, “would share with such other insurance by methods (a) or (b) below, as applicable.” This is, says MIGA, an “other insurance” clause recognized under Mississippi law as a pro rata or sharing clause. The National Union policy, says MIGA, contains a clause of the third type of “other insurance” clause recognized under Mississippi law, the excess insurance clause, which provides that National Union’s coverage will not begin until the other insurance policy’s limits are reached. Citing California and Louisiana cases as its persuasive authority, MIGA argues that these standard “other insurance” clauses do not actually transform primary coverage policies into true excess coverage policies, and that such “other insurance”

clauses simply are self-serving attempts to render primary coverage merely excess coverage. The National Union policy, argues MIGA, offers primary coverage and has not offered "umbrella coverage" at a lower premium rate to cover the excess of any amount not paid by PHICO, citing *Sherlock v. Ocean Salvage Corporation*, 785 So.2d 932 (La. App. 2001); *Progressive Insurance Company v. Universal Casualty Company*, 807 N.E.2d 577 (Ill. App. 2004); and *Continental Marble & Granite v. Canal Insurance Company*, 785 F.2d 1258 (5th Cir. 1986).

Next, citing *Bobby Kitchens, Inc. v. Mississippi Insurance Guaranty Association*, 560 So.2d 129 (Miss. 1989), MIGA argues that Miss. Code Ann. § 83-23-123 (cited above) requires that all other sources of insurance must be exhausted before looking to MIGA. This statute provides that "[a]ny person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy." According to MIGA, this language provides that Dr. Orr first would look to the limits of National Unions' policy before MIGA's responsibility would begin.

**ANALYSIS**

This court agrees with MIGA, although this court has closely reviewed the *Bobby Kitchens, Inc.,* decision and finds no reference to § 83-23-123 at all. The case instead states in its dicta that Mississippi law requires MIGA to assume the insolvent insurer's duties and obligations, which include the duty to defend the insured. *Id.* at 135. The Mississippi Supreme Court's primary holding in *Bobby Kitchens, Inc.*, concludes that MIGA breached its statutory duty by not providing the insured a

defense. The decision does not include in its primary holding that all other collectible insurance must be exhausted before MIGA's responsibility will begin. Nevertheless, the Mississippi Supreme Court appears to recognize the exhaustion requirement.

Turning to the dicta of the *Bobby Kitchens, Inc.,* opinion, the Mississippi Supreme Court recites the phrase often repeated in other MIGA cases, that "*the statutes further require that all other sources of insurance must be exhausted before MIGA can be called upon to make any payment*." This language does not refer directly or otherwise to § 83-23-123 of the Mississippi Code, but this section of the Mississippi Code is the only one which contains language which may interpreted in this manner. Apparently, the Mississippi Supreme Court believes the law to be settled on this point. *See Mississippi Insurance Guaranty Association v. Goldin Properties, Inc.*, 893 So.2d 1062, 1063 (Miss. 2004), citing *Mississippi Insurance Guaranty Association v. Byars*, 614 So.2d 959, 963 (Miss.1993) (the statute further requires that all other sources of insurance must be exhausted before looking to MIGA for any coverage). These cases do not refer to § 83-23-123 when reciting this statement, but these repeated pronouncements by the Mississippi Supreme Court provide this court a clear beacon for navigating to its ultimate Erie-guess in this case.

**MIGA'S ARGUMENTS ON THE RULE OF REPUGNACY & NON-DUPLICATION**

Further, as alluded to above, this court finds no "repugnancy rule" issue present in the instant case. Under Mississippi law, the "rule of repugnancy" is applicable in cases in which "other insurance" clauses or "excessive coverage" clauses conflict in a manner that would render neither insurer responsible for the insured's claims.

Mississippi follows the rule that the courts must enforce contracts as they are written, unless such enforcement is contrary to law or public policy. *Berry v. Lamar Life Insurance Company*, 165 Miss. 405, 142 So. 445 (1932). In *Allstate Insurance Company v. Chicago Insurance Company*, 676 So.2d 271, 275 (Miss. 1996), the Mississippi Supreme Court says that, "[p]ublic policy and common sense must step in when legal jargon fails. Where competing insurance policies each contain conflicting 'other insurance' clauses or 'excessive coverage' clauses, the clauses shall not be applied and benefits under the policies shall instead be pro rated according to the coverage limits of each policy."

National Union's policy was subordinate to PHICO's. Now, PHICO is insolvent and there is no "other insurance" on which National Union may depend to apply its excess insurance clause. MIGA is not another "insurer," primarily because MIGA finds shelter from its enabling statutes which, according to the Mississippi Supreme Court, require that all other sources of insurance must be exhausted before MIGA can be called upon to make any payment. *Mississippi Insurance Guaranty Association v. Goldin Properties, Inc.*, 893 So.2d 1062, 1063 (Miss. 2004), citing *Mississippi Insurance Guaranty Association v. Byars*, 614 So.2d 959, 963 (Miss.1993). The specific statute referred to by MIGA as Mississippi's "non-duplication" statute is Miss. Code Ann. § 83-23-123 referred to above. Thus, in this court's view, Dr. Orr now must look to the limits of the National Union policy to cover any judgment rendered against him.

**<u>CONCLUSION</u>**

Therefore, in light of the foregoing authority, this court predicts that the Mississippi Supreme Court would answer the question of whether National Union or MIGA has first responsibility for any judgment rendered against Dr. Orr to be governed by Miss. Code Ann. § 83-23-123. This statute contains the language which supports the pronouncements of the Mississippi Supreme Court that all other sources of insurance must be exhausted before looking to MIGA for any coverage.

Consequently, this court hereby denies the motion for summary judgment submitted by National Union [**Docket No. 16-1**]. The court grants the motion for summary judgment submitted by MIGA [**Docket No. 19-1**], insofar as it seeks a determination that National Union bears primary responsibility for any judgment amount rendered against Dr. Edwin Orr. Furthermore, this court finds that MIGA is entitled to receive its costs for providing Dr. Orr's defense. Whether MIGA will be entitled to any credit for sums already paid by PHICO and National Union to Kathleen Wright should Dr. Orr be found liable is an issue not ripe for adjudication and, further, will need additional briefing.

In accordance with the local rules, the court will enter a final judgment.

**SO ORDERED AND ADJUDGED** this the 27th day of March, 2006.

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04-cv-340 WS
Memorandum Opinion and Order